THE HON. BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR21-5222-BHS |
| Plaintiff, | DEFENSE TRIAL BRIEF |
| v. | |
| CODY BENSON, | |
| Defendant. | |

Cody Benson, through counsel, respectfully submits the following trial brief to address certain issues that may arise during trial.

Ms. Benson has been charged with three counts of Wire Fraud under 18 U.S.C. § 1343. She has pleaded not guilty to all counts and trial is scheduled for January 3, 2024.

I.  **THE ACCUSATIONS AND THE EVIDENCE**

Before her employment at the Washington Coalition of Crime Victim Advocates (WCCVA), Ms. Benson had worked as a lobbyist and she was originally hired to work on public policy issues. WCCVA was a small nongovernmental agency, with never more than a few employees, overseen by a volunteer Board of Directors (The Board) and the Washington Attorney General's Office (AGO). It was funded by a state grant administered, at the times relevant to this case, by the AGO.

The Board asked Ms. Benson to become Executive Director of WCCVA in 2013, even though she did not have financial management experience. The Board and

DEFENSE TRIAL BRIEF
(*United States v. Benson*, No. CR21-5222-BHS) -1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

AGO shared ultimate responsibility for approval and oversight of WCCVA expenditures. The requirements of Ms. Benson's employment, such as remote work arrangements, were supervised by the Board.

The indictment charges Ms. Benson with "generat[ing] fraudulent invoices . . . in order to give the appearance" that she was performing her job and that WCCVA was providing services. Indictment at ¶ 5. According to the indictment, the AGO "paid" WCCVA $199,978 in reliance on the invoices for work "that was never performed or items that were never ordered or received." Indictment at ¶ 6. This is a misstatement of the evidence.

First, WCCVA received a fixed annual grant and its expenditures were subject to review and approval by the AGO. If an anticipated expense did not occur for whatever reason, grant funds were reallocated to other WCCVA expenses. Toward the end of each fiscal year, Ms. Benson, the Board, and the AGO would see what funds remained for that year and seek ways to allocate them that would serve WCCVA's mission. This is typical for agency budgets, which usually operate on a "use or lose" budgetary basis - if funds are left undelegated at the end of the fiscal year, the agency's budget may be reduced in the following year.

Second, the WCCVA Board was required to submit semi-annual reports and other documentation to the AGO about WCCVA's expenses and activities. While the AGO came to believe that WCCVA was not doing much and was ineffective, WCCVA was working with victims and training advocates, and any faltering was largely attributable to its minimal staffing and funding, and lack of oversight by the AGO itself, not fraud. And if every governmental employee or agency could be federally prosecuted for poor management or wasting taxpayer money, which is the crux of the government's allegations, our courts would grind to a halt.

DEFENSE TRIAL BRIEF
(*United States v. Benson*, No. CR21-5222-BHS) -2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

The false "invoices" alleged in the indictment are more accurately described as estimates for future goods and services and were the subject of extensive communications between Ms. Benson, the AGO's grant administrator, and others about various finance and scheduling issues that ultimately led to rejection or cancellation of the purchases. A recurring issue was whether WCCVA could pay for services at the end of one fiscal year if those services would not be received or provided until the next fiscal year. For example, regarding invoices submitted in June, 2017 for training sessions by the National Organization of Victim Advocates (NOVA), "Cody Benson acknowledged that the training services were for future events, but indicated that, like other trainings, the WCCVA is required to pay in advance." Indictment at ¶ 14. But the AGO in fact approved prepayment for trainings during that fiscal year, funds which WCCVA reallocated after the trainings did not occur. Nevertheless, the government has charged Ms. Benson with wire fraud for seeking funds for the NOVA sessions.

In fact, all of the money that might have been spent on the estimates or "invoices" were reallocated to *other* expenses, like office rent and salaries. Hence, the indictment alleges (and the evidence will show) the only taxpayer money or property ultimately obtained by allegedly fraudulent means was Ms. Benson's salary and related compensation.

The Court has concluded that "Benson is correct that she, like the defendants in *Skilling* and *Yates*, profited from the alleged fraud only through the receipt of her salary and job benefits." Dkt. 64 at 7-8. The Court also concluded that "unlike those defendants, it is not her employer's money that is at issue here. It is the State's money." *Id*. at 7. However, the State was effectively an employer because it was the source of WCCVA's funding, was contractually obligated to pay WCCVA staff salaries under the grant agreement, and controlled the payment of salaries. In fact, the State forced WCCVA to cease operations in 2018 by withholding its staff salaries.

DEFENSE TRIAL BRIEF
(*United States v. Benson*, No. CR21-5222-BHS) -3

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

In short, WCCVA received a set grant amount each year; money that was not spent as anticipated was applied to other agency expenses; and the only money ultimately obtained by alleged fraud is Ms. Benson's compensation. Given that evidence, the charges in this case are highly unusual, factually and legally untenable, and an overreach by the federal government.

## II. JURY INSTRUCTIONS: THE COURT SHOULD GIVE A JURY INSTRUCTION CONSISTENT WITH *SKILLING V. UNITED STATES*.

This Court denied Ms. Benson's Motion to Dismiss, which was based upon *Skilling v. United States*, 561 U.S. 358 (2010), and *United States v. Yates*, 16 F.4th 256 (9th Cir. 2021). Dkt. 64. Resolving that motion was narrowly focused on whether the indictment should be dismissed based on the allegations in the indictment itself.

For trial, the government will present evidence that Ms. Benson benefitted from her alleged scheme by maintaining her salary and benefits and seek convictions, at least in part, based on her receipt of that "money or property" as an element of 18 U.S.C. § 1343. *See* Indictment, dkt. 1, ¶ 5. In fact, at this stage, it does not matter whether the government presents elements of an employment-maintenance theory. The law remains clear that fraudulently maintaining one's job compensation does not satisfy the "money or property" element of wire fraud and convictions on that basis would be improper.

The jury should therefore be instructed on what constitutes "money or property" under the statute. To that end, Ms. Benson will propose an instruction that "money or property," where the instruction refers to those terms in relation to the intent and materiality elements of the statute, does not include maintaining a job or the salary or benefits received for holding a job. This is an accurate statement of the law and one necessary to avoid juror confusion.

DEFENSE TRIAL BRIEF
(*United States v. Benson*, No. CR21-5222-BHS) -4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

### III. POTENTIAL LEGAL AND EVIDENTIARY ISSUES

#### A. Summaries

Summary charts and exhibits may be used to avoid juror confusion and to present the case in the most efficient manner for the jury. If the government seeks to offer exhibits that summarize its investigation, the government must first provide the underlying data and establish its independent admissibility. *See* Fed. R. Evid. 1006 (summaries to prove content); *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 7 (1st Cir. 2006) ("Common sense dictates that [Rule 1006's] guaranteed access, designed to give the opponent the ability to check the summary's accuracy and prepare for cross examination . . . must include unequivocal notice of the party's intent to invoke Rule 1006.... Thus, to satisfy the 'made available' requirement, a party seeking to use a summary under Rule 1006 must identify its exhibit as such, provide a list or description of the documents supporting the exhibit, and state when and where they may be viewed.").

The government cannot circumvent this rule by offering testimony, rather than an exhibit, describing conclusions drawn from hearsay, e.g. bank records, without substantiating those conclusions with the underlying data. *See United States v. Nguyen*, 504 F.3d 561, 572 (5th Cir. 2007) (summary witnesses may not be a substitute for, or a supplement to, closing argument.).

#### B. Exclusion of Witnesses

Under Federal Rule of Evidence 615(a)(3), and with the agreement of the government, the defense will have Stacey Brownstein, an investigator from the Federal Public Defender's Office and potential defense witness, present throughout trial because she is essential for effectively representing Ms. Benson. The defense is aware that the government's lead case agent is also a potential witness and does not object to his presence in court during the trial.

DEFENSE TRIAL BRIEF
(*United States v. Benson*, No. CR21-5222-BHS) -5

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

### C. Impeachment

An "answer that [a witness does] not remember having made a prior statement is as adequate a foundation for impeachment as a flat denial." *United States v. Collicott*, 92 F.3d 973, 981–82 (9th Cir. 1996). *See also United States v. Bullcalf*, 563 F. App'x 535, 536 (9th Cir. 2014) (same). If any government witness either denies having made a statement, or claims to have no recollection of making the statement, the defense must be permitted to impeach the witness by contradiction by offering those statements.

### D. Federal Rule of Evidence 404(b)

The government has not provided notice of intent to introduce evidence of crimes, wrongs or other acts by Ms. Benson. The Court has also ruled that the government cannot introduce evidence related to Count 4 of the indictment, which has been severed.

## IV. DEFENSE WITNESS LIST

The defense may call the following witnesses to testify:

1. Rose Torgerson
2. Rebecca Podszuz
3. Sarah Walker
4. Greg Wright
5. Brad Tower
6. Stacey Brownstein

The defense may need to supplement this list if unexpected evidence or issues arise during trial, and will notify the government and the Court if that occurs.

DATED this 20th day of December, 2023.

Respectfully submitted,

*s/ Colin Fieman*
*s/ Mukund Rathi*
Attorneys for Cody Benson

DEFENSE TRIAL BRIEF
(*United States v. Benson*, No. CR21-5222-BHS) -6

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

I certify that this trial brief contains 1,592 words, in compliance with the Local Criminal Rules

DEFENSE TRIAL BRIEF
(*United States v. Benson*, No. CR21-5222-BHS) -7

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**